Nelida FACCIO–ROBERT, Plaintiff,

v.

**EMPRESS RIVER CASINO,**
Defendant.

No. 99 C 1371.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 5, 2000.

---

## MEMORANDUM OPINION
## AND ORDER

BUCKLO, District Judge.

Nelida Faccio–Robert ("Robert") was hired as a security supervisor for Empress River Casino ("Empress") in Joliet, Illinois, in 1992. After four years she became Chief of Security. She was fired in August 1998 by David Fendrick, who had been hired as Vice President and General Manager in August 1997. She filed her EEOC charge on December 1, 1998, and after receiving her right to sue letter, sued Empress for sex discrimination and harassment under 42 U.S.C.2000e, *et seq.* Empress moves for summary judgment on Robert's hostile work environment sexual harassment claim.[1]  I deny the motion.

---

1. Empress asks for summary judgment on Robert's count II, which she calls "hostile work environment."  In fact only part of count II involves hostile work environment sexual harassment.  Robert also alleges quid

Summary judgment is appropriate where there is no material issue of fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). I take the facts in the light most favorable to the party opposing the motion, *Fulk v. United Transp. Union*, 160 F.3d 405, 407 (7th Cir.1998), but the nonmoving party has the burden of coming forward with enough evidence so that a rational jury could find for it at trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this case, Robert has met her burden.

■■■ A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). However, "isolated and/or trivial remarks of a sexual nature do not satisfy the definition of sexual harassment." *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1143 (7th Cir.1997). Harassment is actionable under Title VII only if it can be described as discrimination in the terms or conditions of work. Therefore, sexual harassment that does not involve a supervisor's extorting sexual favors but instead involves the creation of a hostile work environment must be sufficiently severe or pervasive to make the workplace intolerable for the members of the group discriminated against. *Minor v. Ivy Tech State College*, 174 F.3d 855, 857 (1999).

Empress argues that the episodes recounted by Robert do not rise, or fall, to the level of intolerability required by the Seventh Circuit to maintain a hostile work environment claim. These alleged episodes, which I must accept as true for purposes of this motion, include the following:

1. At a tent party in August 1997, Fendrick, Robert's new boss, told her, "Your chief of security a woman, Huh? I've been the only chief of security and I'm not a woman. I'm all man, as you can see."

2. In September 1997, Fendrick met with Robert one-on-one. As a new manager at the casino he was meeting with all the department heads. He asked her whether she was "going to start crying" and stated that he didn't like "emotional women working for me." He asked her, "Are you married, how's your marriage?"; she told him she was happily married. He stood up, leaned closer to her, and asked, "So are you happily married?" She told him he was. He sat down and asked, "Do you like to have fun? Do you like to play around?" She told him that she didn't like to "play around" but respected her 14-year marriage. He said, "Well Nell, is it OK if I call you Nell?" She interrupted and asked to be addressed as "Nellie, Chief Robert or Mrs. Robert, but not Nell." "OK Nellie," he said, "I'm warning you so you know, to be successful in this business you need to learn to play the game or you'll be gone."

3. On one occasion, the date of which Robert cannot identify, Fendrick made a comment at a pizza party. He was smoking a cigar, raised a glass, and toasted, "To the Empress, to life, to women, to Hitler, to tits." He then bit off the end of the cigar.

4. On a weekly basis, Fendrick would make sexual comments ("nice ass," "big ass," "big tits," etc.) at focus meetings that Robert attended.

5. In December 1997, Robert had to leave a meeting to which Fendrick was late in order to pick up her kids. She met Fendrick in the hall and explained why she was leaving. He stated that she had to decide what was more important (her job or her kids), and that obviously she had already made her choice.

pro quo sexual harassment. But Empress argues only against the hostile work environment claim and does not address the quid pro quo claim except indirectly in its motion to amend its answer, which I deny as explained below. The quid pro quo claim therefore goes to trial.

The Seventh Circuit has a moderately employer-friendly treatment of hostile work environment cases. It has held that although the concept of sexual harassment is "designed to protect working women from the kind of male attentions that can make the workplace hellish for women . . . , it is not designed to purge the workplace of vulgarity." *Baskerville v. Culligan Int'l,* 50 F.3d 428, 430 (7th Cir.1995). The behavior must be " 'extreme.' It is not enough . . . to treat a female employee with[out] sensitivity, tact, [or] delicacy, [to use[ ]] coarse language, or [be] a boor. Such failures are too commonplace in today's America, regardless of the sex of the employee, to be classified as discriminatory." *Minor,* 174 F.3d at 858.

■ But Fendrick crossed the line. Unlike the defendant in *Minor,* he did "quiz her about her personal life" and "engage her in conversations about sex or love." *Id.* at 858. Moreover, Fendrick's crude pickup attempt, coupled with a threat to fire her unless she put out ("play the game or you'll be gone"), was extreme. It colors the earlier "all man" remark and infects the later behavior, rendering that behavior extreme taken in light of the quid pro quo harassment. Even if the rest of Fendrick's conduct did not by itself descend to the level required to maintain a hostile work environment claim, it does not stand by itself. It cannot be considered mere vulgarity or boorishness for a woman to be subjected to a constant stream of sexual remarks, including some with distinctly menacing overtones ("to women, to Hitler, to tits . . ."), by a superior who has not merely propositioned her but has warned her that she will be fired if she does not "learn to play the game." That is "the kind of male attention that can make the workplace hellish for women." *Baskerville,* 50 F.3d at 430.

This quid pro quo harassment distinguishes this case from the cases cited by Empress where the Seventh Circuit affirmed grants of summary judgment for the defendant despite unwanted touching and kisses. Those cases did not involve extortion of sexual favors with threats of adverse employment action. Coupled with the quid pro quo harassment, the other conduct is severe enough to be hostile environment harassment. Obviously quid pro quo harassment is neither necessary nor sufficient for a hostile work environment claim. But, in the appropriate circumstances, it may help make other conduct severe enough to constitute a hostile work environment.

The Seventh Circuit has also held that "isolated and innocuous incidents do not support a finding of sexual harassment." *DiCenso v. Cisneros,* 96 F.3d 1004, 1008 (7th Cir.1996). Empress argues that Robert's case rests on only four incidents, but in the first place, this is not true, given Robert's allegations about weekly sexual comments at the focus meetings over the course of a year. The conduct "persisted for a lengthy period of time and that, during that period, was a pervasive aspect of the plaintiff's employment." *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 445 (7th Cir.1994). Second, "there is no 'magic number' of incidents that give rise to a cause of action. . . . [T]he matter is simply not susceptible to a mathematically precise test." *Id.*

■ Empress asks leave to amend its answer to assert an affirmative defense of statute of limitations to Robert's sexual harassment claim on the grounds that some of these claims occurred more than 400 days before the filing of her EEOC claim on December 1, 1998. Normally leave to amend is to be freely given when justice so requires, Fed.R.Civ.P. 15, but there is no point in allowing the amendment when the affirmative defense would be denied in any event. Here Robert asserted a continuing violation theory. On this, conduct that falls outside the limitations period is actionable if linked with related acts that fall within it, and the acts are then treated as one continuous act ending within the limitations period. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992). The continuing violation doctrine is

applicable only if the conduct can be recognized as actionable in the light of later events that occurred within the limitations period. *Filipovic v. K & R Express Systems, Inc.*, 176 F.3d 390, 396 (7th Cir. 1999). It is applicable here.

█ Fendrick's conduct, including the threat to fire her unless she "played the game," was not actionable under a quid pro quo theory until Robert suffered adverse employment action, that is, until she was fired. Taken by itself, it was not actionable under a hostile work environment theory at all; for that, it had to be part of a pattern of events, some of which (the sexual comments at meetings) occurred within the limitations period. Sexual harassment that is "serious enough to constitute unlawful discrimination on grounds of sex is often a cumulative process rather than a one-time event." *Galloway v. GM Serv. Parts Operations*, 78 F.3d 1164, 1166 (7th Cir.1996).

Moreover, even if the facts underlying the quid pro quo case did not itself constitute a continuing quid pro quo violation, "claims that raise a genuine issue of material fact as to the existence of a hostile environment involve allegations of continuing violations." *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 (9th Cir. 1998) (*citing Meritor*, 477 U.S. at 66–67, 106 S.Ct. 2399). Roberts' hostile work environment claim would bring in the facts outside the limitations period in any event. That would be sufficient basis to deny the motion to amend because, as the Supreme Court has explained, "[t]he terms quid pro quo and hostile work environment are helpful ... in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2264, 141 L.Ed.2d 633 (1998). Once in on either theory, the relevant facts are in. The motion is therefore moot. There would be no point in allowing the defense.

Empress replies that in theory the jury might believe Robert about the events before the limitations period, including the pass and the threat, but not those after, including the sexual comments at meetings, and then Empress would have lost the defense because it would not have been pled. However, I have allowed the continuing defense theory, and since the firing was within the limitations period, it does not matter that some of the conduct Robert alleges falls outside it.

I DENY Empress's motion for summary judgment on Robert's hostile work environment sex harassment claim. Empress's motion in limine to exclude evidence of sex discrimination in 1996 not alleged in EEOC charge or complaint is GRANTED. Its motion in limine to exclude incidents of sex harassment that happened more than 300 days before filing date is DENIED. Empress's motion in limine to exclude evidence of a racist remark is GRANTED. Empress's motion for leave to amend its answer to assert a statute of limitations defense as to the sexual harassment claim is DENIED as moot, as is its motion to strike portions of Robert's response and 12(n).