**Brooke M. SIMON, Plaintiff,**

v.

**CITY OF NAPERVILLE, a municipal corporation Defendant.**

**No. 98 C 5263.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 7, 2000.

874

Peter K. Wilson, Jr., Mickey, Wilson, Weiler & Renzi, Aurora, IL, for Plaintiff.

Michael M. Roth, Howard P. Levine, Paul L. Stephanides, Naperville, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Brooke Simon was hired as a police officer with the City of Naperville, Illinois (the "City"), in November 1997. During her training under Officer Glen Gurski, from November 25 to December 4, 1997, she endured a constant stream of uninvited lewd comments and aggressively suggestive physical contact and gestures. Officer Gurski withheld her performance evaluations during training. The stress of the situation caused her emotional distress, symptoms of which including vomiting before going to work. She complained to fellow officers, who reported the misconduct, and was taken out from under Officer Gurski's supervision. The City ultimately suspended Officer Gurski on February 2, 1998, and removed him from training duties, but Ms. Simon was threatened with retaliation. In addition, Officer Gurski and Ms. Simon were scheduled to work the same beat on a future date. Ms. Simon quit the police department on February 24, 1998, and after timely filing her EEOC charges, sued the City for sexual harassment under Title VII and the Illinois Human Rights Act and for retaliation under both. The City moves for summary judgment on the sexual harassment claims, and I deny the motion.

### I.

The City's motion for summary judgment on Ms. Simon's Illinois Human Rights Act claim, *see* 775 ILCS 5/2–102(D), is unsupported by any argument whatsoever. The entire discussion of this cause of action in the City's memorandum in support of its motion is limited to a request that I grant it summary judgment on Ms. Simon's "pendent state law claim." The City gives me no reason to grant this request. The motion is therefore denied with respect to this claim. The City does not request summary judgment on Ms. Simon's retaliation claims. I now turn to the Title VII claim.

### II.

Title VII's prohibition against sex discrimination, 42 U.S.C.2000e–2(a)(1), protects employees against unwelcome sexual advances that create an offensive or hostile working environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Harassment encompasses all forms of conduct that unreasonably interfere with an individual's work performance or create an intimidating, hostile, or offensive working environment. *Id.; Doe v. R.R. Donnelley & Sons, Co.*, 42 F.3d 439, 443 (7th Cir. 1994). Under a hostile environment theory, the harassment must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and to create an abusive working atmosphere. *McKenzie v. Illinois Dep't of Transportation*, 92 F.3d 473, 479 (7th Cir.1996) (*citing Meritor*, 477 U.S. at 67, 106 S.Ct. 2399). Employees may also sue on the basis of quid pro quo harassment, which occurs when tangible employment benefits are conditioned upon compliance with a harasser's sexual demands. *Bryson v. Chicago State Univ.*, 96 F.3d 912, 915 (7th Cir. 1996). The Supreme Court has recently stated that "[t]he terms quid pro quo and hostile work environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried

out and those where they are not or are absent altogether, but beyond this are of limited utility." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 751, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

## A.

 The City argues, first, that Officer Gurski's actions did not descend to the level of obnoxiousness and pervasiveness required for a sexual harassment claim. The concept of sexual harassment is "designed to protect working women from the kind of male attentions that can make the workplace hellish for women." *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995). "Isolated or trivial remarks" of a sexual nature "do not satisfy the definition of sexual harassment." *Rennie v. Dalton,* 3 F.3d 1100, 1107 (7th Cir.1993). Conduct that is "too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of sex" is not actionable. *Galloway v. General Motors,* 78 F.3d 1164, 1168 (7th Cir.1996). It is not enough that a supervisor fails to treat a female employee with sensitivity, tact, and delicacy, uses coarse language, or is a boor. *Minor v. Ivy Tech State College,* 174 F.3d 855, 858 (7th Cir.1999).

In light of this, the City asks me to hold that the following conduct is not extreme enough to constitute sexual harassment:

1. Officer Gurski would touch Miss Simon and place his arm around the back of her head and shoulders while driving.

2. He spent about 80% of his time with Ms. Simon asking her about personal matters, including boyfriends and previous sexual relationships.

3. He would continually tell dirty jokes and sing songs on duty with perverted words, including reference to "little girlies" and "she is gay."

4. He would continually comment on how "slutty, seductive, and easy" other officers were, and remark on their attire.

5. He discussed how he would feel tempted by other women police officers,

accompanying these statements by making a gesture with his hand and mouth suggesting oral sex.

6. When Ms. Simon requested a particular sort of firearm, Officer Gurski told her that a previous woman officer who had such a gun had dated him and was therefore "special."

7. When Ms. Simon complained of a sore throat, Officer Gurski said that the way to treat it would be to "coat her throat."

8. Officer Gurski failed to turn in Ms. Simon's Daily Observation Reports that form the basis for a new officer's advancement, leading her to think these were being held over her to deter her from reporting or to induce her to perform sexual favors that Officer Gurski implied were his due.

The City cites various cases where the Seventh Circuit held that no reasonable jury could find sexual harassment where there was vulgar language without unwanted touching, passes, or threats, *Baskerville,* 50 F.3d at 431, or several instances of unwanted physical contact and kissing or requests for dates, *Saxton v. AT & T Co,* 10 F.3d 526, 534 (7th Cir.1993); *Weiss v. Coca–Cola Bottling Co.,* 990 F.2d 333, 337 (7th Cir.1993).

 These cases are disanalogous. First, none of them involve the sort of quid pro quo harassment that is supported by Ms. Simon's evidence, in particular, the withholding of the Daily Observation Reports. In this context a reasonable jury could infer that these evaluations were withheld to deter reporting of Officer Gurski's misconduct or induce submission to sexual favors. Such withholding would constitute adverse employment action. Quid pro quo harassment distinguishes this case from cases that did not involve extortion of sexual favors and adverse employment action. As I have said elsewhere, "quid pro quo harassment is neither necessary nor sufficient for a hostile work environment claim. But, in the appropriate circumstances, it may help make other conduct severe enough to constitute

a hostile work environment." *Faccio–Robert v. Empress River Casino,* 80 F.Supp.2d 918, 919–20 (N.D.Ill.2000). This is one of those circumstances, whether the extortion was of sex or of silence.

Second, even without the quid pro quo harassment, Officer Gurski's behavior would be bad enough for hostile work environment harassment. He was not merely an insensitive boor. He touched Ms. Simon in an unwanted way, barraged her with prurient and salacious remarks about her sexual life and other women, hinted that they should date, if not do other things, and occupied 80% of their time together with this sort of behavior. That kind of conduct can create an intimidating, hostile and offensive workplace for women. So it is quite inapposite to argue from cases where some but not all of these sorts of misconduct are present that because lesser vulgarity was not harassment that greater misbehavior where they are all present together was not sexual harassment. It was indeed sexual harassment.

### B.

■■■ The City argues as well that it should be held harmless for whatever Officer Gurski might have done under the law governing vicarious employer liability for sexual harassment. An employer is subject to vicarious liability for sexual harassment by a supervisor. *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. The City argues, first, that it is not vicariously liable because Officer Gurski was not Ms. Simon's supervisor. It quotes the Seventh Circuit's statement that "the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment." *Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1034 (7th Cir1998). According to the City, Officer Gurski was not part of the City's decision-making hierarchy and "did not have the power to alter Plaintiff's employment" [sic]. He merely trained new recruits. However, that is sufficient both in common sense and law. A person assigned to train new recruits and make recommendations that affect their future employment status

obviously has authority that affects terms and conditions of employment.

That is what the Supreme Court concluded in *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). There a '"training captain" who lacked power to hire and fire or to make daily assignments still counted as a supervisor for purposes of Title VII. *Id.* at 781, 808, 118 S.Ct. 2275. In *Ellerth,* the supervisor was "not amongst the decision-making or policy-making hierarchy." 524 U.S. at 747, 118 S.Ct. 2257. Here, if we ask "whether the employee in question had sufficient control over the plaintiff to be considered her supervisor," *Parkins,* 163 F.3d.at 1033, the answer must be yes. Officer Gurski was in a position of authority. She was with him constantly during training, in which he directed her day to day activities and evaluated her performance. Therefore, he qualifies as her supervisor.

Second, the City asserts that it is not liable because it took prompt remedial action. It maintains a sexual harassment policy. Officer Gurski was immediately relieved on his training duties when Ms. Simon's problems were reported by another officer on December 4, 1997. After an investigation of Ms. Simon's allegations, Officer Gurski was suspended for ten days beginning in February 2, 1998. This, the City says, was good enough under *Saxton,* 10 F.3d at 535 (same-day investigation, transfer five weeks later that effectuated no further contact with the victim).

■■■ However, the mere existence of a harassment policy does not automatically shield the employer from liability. *Faragher,* 524 U.S. at 791, 118 S.Ct. 2275. Citing *Sharp v. City of Houston,* 164 F.3d 923, 931 (5th Cir.1999), Ms. Simon argues that a "code of silence" among police officers, combined with threats of retaliation for invoking an anti-harassment policy, deprived the policy of its effectiveness. The "blue wall of silence" is a well-established phenomenon that may shield police from investigations and disciplining of misconduct in a variety of circumstances. *See N.Y. City Comm'n to Investigate Allega-*

*tions of Police Corruption and Anti–Corruption Proc. of the Police Dep't,* at 27 (July 7, 1994) (*quoted in* Hon. Harold Baer, Jr. & Joseph P. Armao, *The Mollen Commission Report: An Overview,* 40 *N.Y.L.Sch. L.Rev.* 73, 82 (1995)). Nor is the problem restricted to New York City. *See United States v. Ambrose,* 740 F.2d 505, 521 (7th Cir.1984), *abrogated on other grounds by United States v. Pino–Perez,* 870 F.2d 1230 (7th Cir.1989), ("[I]t is a fact ... that there is a code of silence [in the Chicago Police Department]."); *Myatt v. City of Chicago,* No. 90–C–03991, 1991 WL 94036, at *5–7 (N.D.Ill. May 23, 1991) (admission of officers of existence of code of silence); *McLin v. City of Chicago,* 742 F.Supp. 994, 1002 (N.D.Ill.1990). Given Ms. Simon's specific allegations about threats of retaliation,[1] this is a material question of fact.

The City invokes *Saxton,* but the case is distinguishable. There the harasser's transfer involved severing all future contact with the victim. Here, Ms. Simons brings forth evidence that she and Officer Gurski would be working the same beat and would almost certainly be in contact. Naperville is a community of 125,803, with a police department of about 168 officers, *see* www.naperville.il.us/police_overview.htm, and it would seem plausible that the two officers could be separated. The City acted promptly without a doubt, and that is to its credit. However, a rational jury might well conclude that the disciplinary action it imposed was not remedial or effective enough.

Third and finally, the City invokes the affirmative defenses available under *Ellerth* and *Faragher.* When there has been no tangible employment action, an employer may avoid liability or damages by showing by a preponderance of the evidence that the employer (1) exercised reasonable care to prevent or promptly correct any sexual harassment, and (2) that the plaintiff unreasonably failed to take advantage

of any preventative or corrective opportunities the employer provided. *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275. I have already held that there was tangible employment action in this case, namely, Officer Gurski's withholding Ms. Simon's performance evaluations, so the defense is not available.

But even if the defense were available, the City would not be entitled to summary judgment on its basis. First, I cannot say as a matter of law that the City exercised reasonable care to promptly correct sexual harassment for the same reasons that I cannot hold as a matter of law that it provided effective remedial action—the inquiry is essentially the same—namely, because Officer Gurski was to be assigned to the same beat as Ms. Simon rather than being transferred so as to sever all contract between them or otherwise insulate their relations. Second, Ms. Simon may not have unreasonably failed to take advantage of any preventative or corrective opportunities the employer offered. The City argues that she made no official complaint, but if she had legitimate concerns about retaliation by other officers this would not have been unreasonable; and she states that she wished to try to resolve the problem by discussing it with Officer Gurski first, an eminently reasonable course of action. Moreover, Ms. Simon did discuss the problem with two fellow officers, one of whom did report Officer Gurski's conduct to the police department.

The City's motions for summary judgment on (1) Ms. Simon's Title VII claims and (2) her Illinois Human Rights Act Sexual harassment claim are DENIED. I commend Ms. Simon's counsel on an unusually helpful and well-argued brief in opposition to these motions.

---

1. Ms. Simon states that she was told that after she returned from leave in January 1998, other officers refused to be her training officer because of her complaint and her "cycle" was extended, which normally reflects poor progress. She was told that other officers stated that they would refuse to back her up when she was on call.