**Michael S. NOLEN, Plaintiff,**

v.

**SOUTH BEND PUBLIC TRANSPOR-TATION CORPORATION and Ry-der/Ate, Inc., Defendants.**

No. 3:99CV142 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

April 7, 2000.

Georgia C. Luks–McFarland, South Bend, IN, John C. Hamilton, Hamilton Law Firm, South Bend, IN, for Michael S. Nolen, plaintiff.

Timothy W Woods, Jones Obenchain Ford Pankow, Lewis & Woods, South Bend, IN, for South Bend Public Transportation Corporation, defendant.

## MEMORANDUM AND ORDER

SHARP, District Judge.

This cause is before the Court on Defendants' Motion for Summary Judgment. The parties have fully briefed the issues and the Court heard oral argument on March 17, 2000.

## JURISDICTION

The case is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

## BACKGROUND

Plaintiff, Michael Nolen (Nolen) was employed by defendant South Bend Public Transportation Corporation (Transpo) from October 21, 1972 until April 22, 1997. Defendant Ryder/ATE, Inc. (Ryder) is a Delaware corporation that contracts management services to transportation companies throughout the country. Ryder contracted with Transpo and sometime in 1993 provided employee Mary McLain as an Assistant General Manager. At the time McLain began working with Transpo, Nolen was the Director of Operations and reported to the General Manager. For more than twenty years he had always received satisfactory performance reviews and had no negative records in his personnel file.

The facts of this case are somewhat difficult to sort out. The parties disagree as to certain dates and occurrences. In addition, much of the allegedly harassing behavior is based on inference and innuen-

do. However, for summary judgment purposes the Court construes the facts in a light most favorable to Nolen. Nolen alleges that beginning in 1995, McLain began making sexual comments and propositioning him.[1] He ignored her advances. At the end of 1995, she and the General Manager gave Nolen an excellent performance evaluation. According to Nolen, McLain then requested to directly supervise Nolen's department. The request was granted some time in 1996. Once Nolen had to report directly to her, McLain allegedly began a campaign to either get him to have a relationship with her or to get him out of the company.

In February or March of 1996, McLain and Nolen were to attend a training seminar in Wisconsin. Nolen did not want to go and asked McLain if a young female employee could take his place. The record indicates that McLain may have thought Nolen wanted to go with the young women. Nolen alleges that McLain became angry and jealous. After this incident McLain increased Nolen's assignments, nit-picked, and allegedly showed favoritism to males who supposedly accepted her "propositions." In August of 1996, McLain became the General Director. After her promotion, she began creating a paper trail, writing notes and documenting frequent complaints about Nolen. In October, 1996, without McLain's knowledge, Nolen requested his personnel file and

looked through its contents. This was the last time he was allowed to see his file until it was subpoenaed in 1998.[2]

In December, 1996, McLain accused Nolen of falsifying time sheets for part-time employees.[3] Nolen denied the accusation and the personnel specialist responsible for payroll vouched for him. (See Cook Aff.) In spite of this, McLain asserts the falsification of payroll as one of the legitimate non-discriminatory reasons for dismissing Nolen. In January 1997, Nolen received his first negative evaluation and a "six-month improvement plan" from McLain. Nolen complained to Ryder on January 28, 1997, and had a follow-up call on February 7.[4] In late February, McLain told Nolen he had not yet met any of his improvement goals. In early March, 1997, someone circulated copies of newspaper articles about the Missouri transportation department where McLain previously worked. The articles were very critical of McLain. She accused Nolen of distributing the articles and trying to create dissension. Several employees testified that Nolen did not distribute those articles. (Anderlik Aff.; Hackney Aff.; Williams Aff.) On March 7 and March 13, 1997, McLain and Nolen both met with Transpo board members.[5] There is nothing in the record to indicate that any action was taken or that notes were kept. McLain next accused Nolen of violating a time-off policy she had recently changed.[6] At some point,

1. For Example: McLain would call him Superman and ask if he could "perform" as well as Superman; McLain took Nolen to a bar, ordered a drink called a "slow comfortable screw" and told Nolen she wanted the same from him; on one business trip McLain suggested to Nolen that they spend the night and just get one room.

2. Nolen later requested his file on several occasions but was given various reasons as to why he could not have it. He was also told that McLain was keeping it in her office. Nolen contends that when he subpoenaed his file in 1998 he found some documents dated for early 1996 that were not in the file when he looked through it in October, 1996.

3. What actually happened was that due to a driver shortage, two or three part-time employees worked more than the allowed 20 hours in on pay period. They were allowed to take the hours in excess of the allowable 20 and put them on the next pay period. No employee was ever paid for hours that were not worked.

4. Apparently Nolen complained that he was being harassed by McLain and could not deal with her. He did not specifically mention sex or gender harassment.

5. Nolen never specifically mentioned sex or gender harassment at these meetings.

6. There is confusion as to when the vacations in question were actually planned and re-

Nolen left on his scheduled vacation. McLain claims she found "several violations of company policy" while Nolen was away, however, she never elaborates further. Shortly after Nolen returned from vacation he was fired. McLain contends she had further reason to believe that Nolen falsified payroll, violated company policies and purposely incited dissension among the workers therefore his discharge was for cause. Nolen claims those reasons are a pretext for sex discrimination. Nolen filed charges with the E.E.O.C. alleging sex/gender harassment, hostile environment and retaliation. He claims he suffered severe mental distress.

## I. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998); *Leisen v. City of Shelbyville*, 968 F.Supp. 409 (S.D.Ind.1997), *aff'd* 153 F.3d 805 (7th Cir.1998).

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir.1998), *reh'g denied*. A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel*, 160 F.3d 1139 (7th Cir.1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920–21 (7th Cir.1994), nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library* Sys., 60 F.3d 317, 320 (7th Cir.1995). This general standard is applied with added rigor in employment discrimination cases, where intent is inevitably the central issue. *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793 (7th Cir.1995); *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368 (7th Cir.1992); *Tomasello v. Delta Air Lines, Inc.*, 8 F.Supp.2d 1090 (N.D.Ill.1998). Accordingly, "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir.1995); *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994).

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in his favor. *Schneiker v. Fortis Insurance Co.*, 200 F.3d 1055 (7th Cir.2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337–38 (7th Cir.1999). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Wollin v. Gondert*, 192 F.3d 616, 621–22 (7th Cir. 1999); *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1308 (7th Cir.1997). The nonmovant, however, must make a

quested and whether Nolen was aware of McLain's changes in procedure before the conflict arose.

showing sufficient to establish any essential element for which he will bear the burden of proof at trial. *Celotex,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Shank v. William R. Hague, Inc.,* 192 F.3d 675, 681 (7th Cir.1999); *Wintz v. Northrop Corp.,* 110 F.3d 508, 512 (7th Cir.1997). Applying the above standard, this Court addresses defendant's motion.

## II. PROPER DEFENDANTS

Nolen filed his suit against both Transpo and Ryder. He asserts that Ryder is subject to liability because it was McLain's employer. Alternatively, Nolen asserts that Ryder is liable as his co-employer.

### A. The E.E.O.C. Charges

Ryder claims that it cannot be named as a defendant because it was not named in Nolen's E.E.O.C. filing. Ordinarily, a party not named in an E.E.O.C. charge may not be sued under Title VII. However, given the Civil Rights Act's purposes, charges are to be construed with utmost liberality and parties sufficiently named or alluded to in the factual statement are to be joined. *Eggleston v. Chicago Journeymen Plumbers', Local Union No. 130,* 657 F.2d 890, 905 (7th Cir.1981). The purpose of this exception is to prevent frustration of the goals of Title VII by not requiring procedural exactness. *Id.* at 906. It is noted that Congress could not have intended that "a person filing E.E.O.C. charges should accurately ascertain, at the risk of later facing dismissal, at the time the charges were made, every separate entity which may have violated Title VII." *Id.* at 906; *see Jenkins v. Blue Cross,* 538 F.2d 164 (7th Cir.1976), *cert. denied* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598.

In *Eggleston,* the Seventh Circuit adopted an exception to the general rule that a party must be named in an E.E.O.C. charge in order to be sued under Title VII. 657 F.2d 890. "[T]he decisive factor in determining if [this exception applies] ... is whether the unnamed defendant had notice that it was subject to suit [, because w]hen a party has notice of the possibility

of a discrimination action against it, that party has the opportunity, or at least the incentive, to conciliate." *Bright v. Roadway Services, Inc.,* 846 F.Supp. 693, 697 (N.D.Ill.1994) (citing *Eggleston,* 657 F.2d at 906) (italics in the original). Furthermore, courts in this circuit have found that when the unnamed party was mentioned in the paragraph explaining the particulars of the administrative charge, that party should not be dismissed. *See Sampson v. Washington Township of Marion Co.,* No. IP92–1276–C–D/F, 1995 WL 478836 (S.D.Ind. March 14, 1995) (stating "it's also noteworthy that the E.E.O.C. charge form provides a space to name the 'employer.' It doesn't provide a place to list 'other respondents, etc.'," this makes explicit reference to other parties in the body of the charge more significant). *See also, Rush v. McDonald's Corp.,* 760 F.Supp. 1349 (S.D.Ind.1991), *aff'd* 966 F.2d 1104 (7th Cir.1992); *Cassano v. DeSoto, Inc.,* 860 F.Supp. 537 (N.D.Ill.1994).

 Ryder had notice of Nolen's charges. On May 15, 1997, Nolen filed an unemployment claim that was investigated by an ALJ. McLain was a witness in that proceeding. Furthermore, Nolen specifically refers to Ryder in his E.E.O.C. charge of August 12, 1997, on page two. Given Ryder's status as McLain's employer as well as its contractual status with Transpo, this Court sees no reason to dismiss Ryder from the present suit simply because it was not named as "the employer" on the first page of Nolen's E.E.O.C. charge.

### B. Respondeat Superior

 Defendants also argue they have no liability because a sexual harassment policy was in place and Nolen did not avail himself of the process. Two recent decisions from the Supreme Court of the United States, *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275,

141 L.Ed.2d 662 (1998), clarify the standards governing an employer's liability under Title VII for a supervisor's sexual harassment of a subordinate. After *Faragher* and *Ellerth,* simply having a harassment policy in place is no longer enough. Employers now have an affirmative duty to prevent sexual harassment by supervisors. Once a plaintiff has established actionable discrimination, the inquiry turns on whether a supervisor's harassment culminated in a "tangible employment action," such as "discharge, demotion, or undesirable reassignment." *Faragher,* 524 U.S. 775, 807, 118 S.Ct. at 2293, 141 L.Ed.2d 662. If an employee has established actionable discrimination involving "no tangible employment action," an employer can escape liability if it took reasonable care to prevent and correct any sexually harassing behavior. *Id.* However, such is not the case here, as Nolen has alleged a tangible employment action. If Nolen can link his termination with McLain's sexual harassment, liability is automatic. *See Faragher,* 524 U.S. 775, 806–07, 118 S.Ct. at 2292–93, 141 L.Ed.2d 662; *Ellerth,* 524 U.S. 742, 764, 118 S.Ct. at 2270, 141 L.Ed.2d 633.[7] In this case, Ryder was McLain's employer. Ryder contracted with and provided McLain's services to Transpo. Under the guidance of *Faragher* and *Ellerth,* it is apparent that Ryder may be subject to liability for McLain's alleged harassment.

### C. Co–Employer

█ As an alternative, Nolen argues that Ryder was his co-employer and therefore is subject to liability for McLain's harassment. There is no evidence that Nolen was ever employed by Ryder or paid by Ryder. Ryder contracts with and manages more than fifty city transportation systems. Transpo is one of the systems to which Ryder provides manage-

ment. It is responsible for the managerial employees it provides. Ryder is not responsible for Transpo's employees. The Court finds absolutely no merit to this argument.

### III. SUMMARY JUDGMENT ANALYSIS

Defendants seek summary judgement on several bases. Defendants assert that Nolen cannot make a *prima facie* showing on any of his claims. Defendants also claim that evidence of McLain's alleged harassment is barred by the 180 day statute of limitations. Additionally, Defendants proffer a legitimate non-discriminatory reason for Nolen's termination. Finally, Defendants argue that Nolen's state law claim for emotional distress is insufficiently pleaded and is barred by the two year statute of limitations as well as the Indiana Workmen's Compensation Act.

### A. Statute of Limitations

█ Defendants first argue that Nolen cannot make a *prima facie* showing on any of his claims because most of the alleged instances of discrimination fall outside the statute of limitations. Defendants contend that because Nolen filed his E.E.O.C. charges in July, 1997, he may not rely on any discriminatory acts that occurred before January 25, 1997 (180 days). Defendants' argument is unpersuasive for two reasons. First, in *Russell v. Delco Remy Div. of General Motors Corp.,* 51 F.3d 746 (7th Cir.1995), the appellate court held that the district court's reliance upon the 180–day limitations period, without inquiry into application of the 300–day period, was an abuse of discretion. The Seventh Circuit explained that in states where a state agency has a "worksharing" agreement with the E.E.O.C., the 300 day statute of limitations normally applies.[8] Such an

---

7. The issues surrounding the sexual harassment policy and procedure and Nolen's failure to take advantage of same my have some impact on Nolen's claim for punitive damages. However, that issue is not currently before the Court.

8. Numerous courts have struggled with this issue and concluded, in different circumstances, that the provisions of various worksharing agreements operate to provide claimants with the benefit of the 300–day filing period. *See, e.g., Commercial Office Products,*

agreement exists between the IDHR and the E.E.O.C. *See Sofferin v. American Airlines, Inc.,* 923 F.2d 552, 554 (7th Cir. 1991). The Seventh Circuit has determined that the provisions of Indiana's and Illinois' worksharing agreement with the E.E.O.C. have the effect of simultaneously initiating and terminating state proceedings, ultimately providing a plaintiff with the benefit of the 300–day limitations period regardless of whether charges are only filed with the E.E.O.C. *Russell,* 51 F.3d 746, 750–51; *Sofferin,* 923 F.2d at 559; *Hong v. Children's Memorial Hosp.,* 936 F.2d 967, 970–71 (7th Cir.1991), *cert. denied,* 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994); *Marlowe v. Bottarelli,* 938 F.2d 807, 812–13 (7th Cir.1991). *See also, Van Jelgerhuis v. Mercury Finance Co.,* 940 F.Supp. 1344 (S.D.Ind.1996) (as general rule, in deferral state, Title VII plaintiff must file charge with Equal Employment Opportunity Commission (E.E.O.C.) within 300 days of occurrence of event that forms basis of complaint); *Stephenson v. Aluminum Co. of America,* 915 F.Supp. 39 (S.D.Ind.1995). Accordingly, this Court finds that the applicable statute of limitations is 300 days in this case.

■ Furthermore, as for Nolen's "continuing violation" argument, the Seventh Circuit recognizes three viable theories of continuing violations. *Jones v. Merchants Nat'l Bank & Trust Co.,* 42 F.3d 1054, 1058 (7th Cir.1994); *Stewart v. CPC Int'l, Inc.* 679 F.2d 117 (7th Cir.1982). The first theory "encompasses decisions usually relating to hiring and promotions, where the employer's decision-making process takes place over a period of time, making it difficult to determine the actual date of the allegedly discriminatory act." *Jones, su-*

*pra* (citing *Stewart,* 679 F.2d 117, 120–21); *Lacy v. Ameritech Mobile Communications, Inc.,* 965 F.Supp. 1056 (N.D.Ill. 1997), *aff'd by unpublished order,* 142 F.3d 440 (7th Cir.1998), *cert. denied,* 526 U.S. 1025, 119 S.Ct. 1266, 143 L.Ed.2d 362 (1999). The facts in this case do not support this theory. The second continuing violation theory involves an employer's express, openly espoused policy that is alleged to be discriminatory. *Jones* 42 F.3d at 1058. This theory is also inapplicable to this case. The third theory, grows out of cases in which "the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly." In such cases the challenged practice is evidenced only by a series of discrete, allegedly discriminatory acts. *Stewart, supra; see also, Mack v. Great Alt. & Pac. Tea Co., Inc.,* 871 F.2d 179, 183 (1st Cir.1989); *Lacy,* 965 F.Supp. 1056, 1064. Under the third theory, the plaintiff realizes that he is a victim of discrimination only after a series of discrete acts has occurred. The limitations period begins to run when the plaintiff gains such insight. *Moskowitz v. Trustees of Purdue Univ.,* 5 F.3d 279, 281–82 (7th Cir.1993). In *quid pro quo* harassment where no open threat is made, the harassment in its early stages might not cross the threshold that separates the nonactionable from the actionable. It is only when coupled with some tangible employment action that *quid pro quo* harassment exists. Here, the alleged discriminatory act is the actual tangible employment action, Nolen's firing, not McLain's alleged sexual advances. *Silverberg v. Baxter Healthcare Corp.,* No. 88 C 9124, 1990 WL 70411 (N.D.Ill. May 4, 1990). *See also. See also,*

486 U.S. at 114–15, 108 S.Ct. at 1670–71 (concluding that a state agency's waiver of a sixty-day deferral period pursuant to a worksharing agreement "terminated" its proceedings). *See also Worthington v. Union Pacific R.R.,* 948 F.2d 477, 483 (8th Cir.1991); *Trevino–Barton v. Pittsburgh Nat'l Bank,* 919 F.2d 874, 878–79 (3d Cir.1990); *E.E.O.C. v. Techalloy Md., Inc.,* 894 F.2d 676, 678 (4th

Cir.1990); *Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1479 (9th Cir.1989); *Griffin v. Air Prods. & Chemicals, Inc.,* 883 F.2d 940, 943 (11th Cir.1989); *Shepherd v. Kansas City Call,* 905 F.2d 1152, 1153 (8th Cir.1990) (remanding for further proceedings to determine whether a worksharing agreement triggered application of the 300–day filing period).

*Faccio–Robert v. Empress River Casino,* 80 F.Supp.2d 918, 921 (N.D.Ill.2000) (quoting *Galloway v. G.M. Serv. Parts Operations,* 78 F.3d 1164, 1166 (7th Cir., 1996), *reh'g denied* ). Nolen's firing was the culmination of a discrete series of acts. The parties do not dispute that Nolen's termination is well within the required time for his E.E.O.C. filing. This act may be linked to the prior "discrete" acts for the purpose of evaluating whether Nolen was subjected to *quid pro quo* harassment. Nolen has also alleged a hostile environment claim. In hostile environment cases, a continuing violation is almost inherent because, for the sexual harassment to be actionable, it must be "pervasive" within the work place.[9] To determine pervasiveness, the Court is required to analyze all of the circumstances, including the frequency and severity of the alleged conduct. *Galloway,* 78 F.3d 1164; *Lacy,* 965 F.Supp. 1056. It is this Court's opinion that the continuing violation theory is applicable.

 Finally, regardless of whether the continuing violation theory applies, even though some acts of discrimination alleged to have occurred before the limitations period may not be actionable, they are admissible as evidence of earlier discriminatory conduct by an employer. *See Mathewson v. National Automatic Tool Co., Inc.,* 807 F.2d 87, 90 (1986) (time-barred evidence may be used to prove a timely claim based on subsequent discriminatory conduct by an employer); *Robinson v. Board of Educ. of City of Chicago,* No. 96 C 92, 1999 WL 675302 (N.D.Ill. Aug.18, 1999). Therefore, even specific time-barred conduct may be relevant, and may be used to illuminate current practices which, viewed in isolation, may not indicate discriminatory motives. *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Crawford v. Western Electric Co.,* 614 F.2d 1300, 1314 (5th Cir.1980); *Conrad v. City of Chicago,* 954 F.Supp. 180 (N.D.Ill. 1997).[10]

Having determined that the continuing violation theory applies, Nolen must still make a prima facie showing as to each of his claims. Accordingly, the Court now considers the relevant evidence as to each.

**B. Quid Pro Quo Harassment**

The E.E.O.C.'s Guidelines on Sexual Harassment, 29 C.F.R. § 1604.11(a), describe *quid pro quo* harassment as:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment *or* [2] submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.

*Bryson v. Chicago State Univ.,* 96 F.3d 912, 915 (7th Cir.1996); *King v. The Finish Line, Inc.,* 997 F.Supp. 987, 991 (N.D.Ill.1998). The Seventh Circuit has indicated agreement with a five-part test for *quid pro quo* sexual harassment: "whether the plaintiff has shown (1) that

---

9. By its nature, a claim of "hostile environment" discrimination turns on the existence of a continuing violation, rather than on any individual offensive act. Indeed, Webster's dictionary defines the term environment as: "1. The circumstances or conditions surrounding one ... 2. The total of circumstances ... esp.: a. The combination of external or extrinsic physical conditions ... b. The complex of social and cultural conditions affecting the nature of an individual or community." Webster's II: New Riverside University Dictionary (1984). An environment is the forest, not a particular tree.

10. While such is not argued in this case, the Court also notes that while failure to satisfy Title VII's requirement that a charge of discrimination be filed with E.E.O.C. within 180/300 days after an alleged unlawful practice is a bar to a Title VII suit in federal court, it is not an absolute bar; like a statute of limitations, the filing requirement is subject to waiver, estoppel, and equitable tolling. *Perkins v. Silverstein,* 939 F.2d 463, 469–70 (7th Cir.1991); *Washburn v. Sauer–Sundstrand, Inc.,* 909 F.Supp. 554 (N.D.Ill.1995).

she or he is a member of a protected group, (2) the sexual advances were unwelcome, (3) the harassment was sexually motivated, (4) the employee's reaction to the supervisor's advances affected a tangible aspect of her employment, and (5) respondeat superior has been established." *Bryson,* 96 F.3d at 915. *Accord King,* 997 F.Supp. at 991; *Savino v. C.P. Hall Co.,* 988 F.Supp. 1171, 1181 (N.D.Ill.1997), *aff'd,* 199 F.3d 925, (7th Cir.1999); *Hawthorne v. St. Joseph's Carondelet Child Center,* 982 F.Supp. 586, 590 (N.D.Ill.1997).

▇▇▇ There is no question that Nolen is a member of a protected group, male. The second element is subjective in that it is examined from the point of view of the plaintiff, *see Bryson,* 96 F.3d at 916, but the focus is on the plaintiff welcoming or not welcoming the conduct, not necessarily the plaintiff's understanding of whether sexual favors are being requested. There is no question that Nolen did not welcome the alleged conduct. The third element focuses on the harasser's subjective intent, that is whether she was seeking sexual favors. *See id.* Thus, *quid pro quo* sexual harassment can occur regardless of whether the plaintiff subjectively recognizes that he or she has been propositioned or whether an objective observer would have understood that the plaintiff was propositioned. Furthermore, a *quid pro quo claim* differs from a hostile work environment claim in that Nolen does not need to prove McLain's conduct was sexually offensive. He must only present evidence to support a reasonable inference there was a request for a sexual relationship and that his rejection of that request is related to his termination. *Hull v. APCOA/Standard Parking Corp.,* slip op., No. 99 C 2832, 2000 WL 198881 (N.D.Ill. Feb.14, 2000); *King v,* 997 F.Supp. at 987; *Valadez v. Uncle Julio's of Ill., Inc.,* 895 F.Supp. 1008 (N.D.Ill.1995). The facts in this case are very similar to those in *Hull.* Nolen worked for more than twenty years without incident. He routinely received good evaluations and was promoted. Before McLain became his direct supervisor she evaluated him favor-

ably. Then she became his supervisor. The alleged sexual advances occurred. Nolen rebuffed the advances. McLain became increasingly critical of Nolen. She allegedly reduced his company travel, she started a "paper trail," gave him a negative evaluation, accused him of policy violations and ultimately had him fired. For summary judgment purposes, Nolen has made a sufficient a showing.

The fourth element also involves questions of fact. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633. Nolen alleges that because he refused McLain's advances he was denied travel opportunities and was fired. While not everything that makes an employee unhappy is an actionable adverse action, *see Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir. 1996), Nolen's allegations are sufficient to withstand summary judgment.

▇▇▇ As for the fifth element, an employer is subject to strict liability for the quid pro quo harassment of a supervisory employee. *Perry v. Harris Chernin, Inc.,* 126 F.3d 1010, 1013 (7th Cir.1997); *Jansen v. Packaging Corp. of America,* 123 F.3d 490, 494–95 (7th Cir.1997), *cert denied by Ellerth v. Burlington Indus., Inc.,* 524 U.S. 951, 118 S.Ct. 2365, 141 L.Ed.2d 734 (1998); *Hull,* 2000 WL 198881 at *10.

For the preceding reasons, Nolen has made a *prima facie* showing sufficient to survive summary judgment. Defendants contend that summary judgment is proper nonetheless, because Nolen was fired for legitimate non-discriminatory reasons.

### C. Pretext

▇▇▇ Defendants claim Nolen was fired for poor performance, policy violations and staff disruption. Nolen claims the purported reasons are mere pretext. To

survive summary judgment Nolen must present at least some evidence that demonstrates that the employer's proffered reason is unworthy of credence. *See Essex,* 111 F.3d 1304, 1310. Such a showing requires evidence that the employer's explanation: (1) has no basis in fact; (2) was insufficient to warrant the action taken; or (3) did not actually motivate the employment decision. *See Johnson v. City of Fort Wayne, Ind.,* 91 F.3d 922, 931 (7th Cir.1996); *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988), *reh'g denied.* The relevant question is whether the employer honestly believed its proffered reason for discharge, not whether the employer was mistaken, acted unfairly, or based its decision on a bad policy. *Bahl v. Royal Indem. Co.,* 115 F.3d 1283, 1291 (7th Cir.1997); *Essex,* 111 F.3d at 1310; *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 411 (7th Cir.1997). In trying to establish that an employer's explanation is pretext for discrimination, an employee must "focus on the specific reasons advanced by the defendant." *See Hughes v. Brown,* 20 F.3d 745, 747 (7th Cir.1994) (quoting *Smith v. General Scanning, Inc.,* 876 F.2d 1315, 1319 (7th Cir.1989)). The Seventh Circuit instructs that "to squarely rebut the articulated reason for [plaintiff's] discharge," *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 349 (7th Cir.1997), a plaintiff "must focus on the specific reasons advanced by the defendant to support the discharge." *Smith,* 876 F.2d at 1319. "For example, an employee discharged for poor attendance does not prove pretext by arguing that no other employee did the job better. He only proves pretext by establishing that his attendance was good enough to keep his job." *Plair,* 105 F.3d at 349.

All of the material events surrounding Nolen's termination are disputed. Both Nolen and the personnel specialist testified that he had nothing to do with the improper part-time employees' payroll issue. Nolen and other employees testified that he did not circulate the Missouri newspaper articles. The plethora of affidavits and exhibits submitted by each side make it clear that issues of fact remain. At summary judgment the court does not make determinations of credibility. Nolen has presented enough evidence to support a reasonable inference that Defendants' reason for terminating him is a pretext for sexual harassment. Accordingly, Defendants' summary judgment must be denied on Nolen's *quid pro quo* sexual harassment claim.

### D. Hostile Environment

Nolen also alleges he was subjected to a hostile environment. *Quid pro quo* harassment is neither necessary nor sufficient for a hostile work environment claim. *Faccio–Robert,* 80 F.Supp.2d 918, 920; *Simon v. City of Naperville,* 88 F.Supp.2d 872 (N.D.Ill. 2000). Sexual harassment which is so " 'severe or pervasive' as to 'alter the conditions of the victim's employment and creates an abusive working environment' violates Title VII." *Faragher,* 524 U.S. 775, 786, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (internal quotations omitted)). In order to establish a prima facie case of hostile environment sexual harassment, a plaintiff must show that: (1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on sex; (3) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile or offensive working environment, and (4) there is a basis for employer liability. *Rennie v. Dalton,* 3 F.3d 1100, 1107 (7th Cir.1993), *cert. denied; see Guess v. Bethlehem Steel Corp.,* 913 F.2d 463, 465 (7th Cir.1990), *reh'g denied.* Additionally, the plaintiff must demonstrate that he subjectively regarded his environment as hostile, and that the charged harassment was also ob-

jectively abusive. *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 345 (7th Cir. 1999), *reh'g denied, cert. denied* — U.S. ——, 120 S.Ct. 178,. 145 L.Ed.2d 150. Whether a hostile environment exists is a question of law. *Id.* To determine whether Nolen's work-place was hostile, the court considers: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Silk v. City of Chicago,* 194 F.3d 788 (7th Cir.1999). The totality of the circumstances is considered and no single factor is required. *Harris, supra; McKenzie v. Illinois Dept. of Transport,* 92 F.3d 473, 479–80 (7th Cir. 1996). While there is no bright line rule to separate the actionable from the non-actionable, in *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995), the Seventh Circuit clarified the distinction as:

> [o]n one side lies sexual assaults; other physical conduct, whether amorous or hostile, for which there is no consent expressed or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; porno-

graphic pictures. On the other lies the occasional vulgar banter, tinged with sexual innuendo, or coarse or boarish workers.

▮ Analyzing plaintiff's claim under this guidance leads to the inescapable conclusion that even if true, defendants' conduct does not fall on the harassment side of the line.[11] Nolen was not physically attacked, nor was he directly threatened or intimidated. Considering all the evidence in a light most favorable to Nolen it is this Court's opinion that the complained of conduct does not rise to the level of severity required by Title VII and summary judgment is proper as to this claim.

### E. Retaliation[12]

▮ Nolen additionally brings a separate claim of retaliation. Title VII forbids an employer to "discriminate against any individual ... because he has made a charge ... or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that "(1) he engaged in statutorily protected expression; (2) he suffered an

---

11. *See also, Minor v. Ivy Tech State College,* 174 F.3d 855, 857–858 (7th Cir.1999) (affirming summary judgment for employer, even where plaintiff demonstrated her supervisor repeatedly called her at home, spoke to her in an allegedly "sexy" voice and placed his arms around her and kissed her on one occasion); *Adusumilli v. City of Chicago,* 164 F.3d 353, 361–62 (7th Cir.1998) (affirming summary judgment for employer, even where a supervisor made allegedly derogatory sexual comments to plaintiff and plaintiff's co-workers repeatedly stared at plaintiff's breasts and, on one occasion, touched plaintiff's buttocks), *cert denied* — U.S. ——, 120 S.Ct. 450, 145 L.Ed.2d 367 (1999); *Baskerville,* 50 F.3d 428 finding for employer where plaintiff's supervisor, over a seven-month period: (1) called plaintiff a "pretty girl"; (2) made grunting sounds when plaintiff wore a leather skirt; (3) told plaintiff that his office was not hot "until you walked in here"; (4) stated that a public address announcement asking for everyone's attention meant that "all pretty girls [should]

run around naked"; and (5) alluded to his wife's absence from town and his loneliness, stating while making an obscene gesture that he had only his pillow for company.

Compare, *Simon,* 2000 WL 283107 (denying summary judgment for employer where supervisor touched plaintiff in an unwanted way, barraged her with prurient and salacious remarks about her sexual life and other women, hinted that they should date, if not do other things, and occupied 80% of their time together with this sort of behavior); *Gordon v. Southern Bells, Inc.,* 67 F.Supp.2d 966 (S.D.Ind.1999) (summary judgment denied subjectively and objectively hostile, felt threatened intimidated.)

12. A type of retaliation is automatically included in *quid pro quo* harassment as the plaintiff has no claim until the defendant causes some tangible employment action. However, in order to allege retaliation as a separate and distinct claim, Nolen has to meet a more difficult burden.

adverse action; and (3) there is a causal link between the protected expression and the adverse action." *Eiland v. Trinity Hosp.*, 150 F.3d 747, 753 (7th Cir.1998). *See Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 397 (7th Cir.1998) (quoting *Essex*, 111 F.3d 1304, 1309). Nolen's claim fails on the first element. The evidence in the record indicates that Nolen never complained to either defendant about "sexual" harassment. Accordingly, summary judgment is proper as to Nolen's separate claim for retaliation.

### F. Emotional Distress

Finally, Defendants seek summary judgment on Nolen's state law claim for emotional distress. As a preliminary challenge to Nolen's emotional distress claim, Defendants argue that the exclusivity provision of the Indiana Worker's Compensation Act, Ind.Code § 22–3–2–6, would deny subject matter jurisdiction to an Indiana court to hear the claim, thereby also denying supplemental jurisdiction to the federal court. The Worker's Compensation Act would not strip subject matter jurisdiction to entertain an action for intentional infliction of emotional distress where the plaintiff does not seek damages for physical injuries. *McCreary v. Libbey–Owens–Ford Co.*, 132 F.3d 1159 (7th Cir.1997), *reh'g denied. See Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1288 (Ind.1994) (allowing employee to sue employer for non-physical injuries), *reh'g denied; Landis v. Landis*, 664 N.E.2d 754, 755–56 (Ind.Ct.App.1996) (allowing employee to sue employer for intentional infliction of emotional distress), *trans. denied.* However, Indiana courts have been reluctant to award damages for intentional infliction of emotional distress in employment cases. *McCreary*, 132 F.3d 1159.

Intentional infliction of emotional distress is committed by "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. . . ." *Ledbetter v. Ross*, 725 N.E.2d 120 (Ind.Ct.App.2000); *Culli-*

*son v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991). The intent to harm emotionally constitutes the basis for the tort of an intentional infliction of emotional distress. *Id.* However, the requirements to prove this tort are "rigorous." KEETON ET AL., § 12 at 61. Intentional infliction of emotional distress is found where there is "conduct exceeding all bounds usually tolerated by a decent society [and causing] mental distress of a very serious kind." *Id. See e.g., Bradley v. Hall*, 720 N.E.2d 747 (Ind.Ct.App.1999) (allegations that employee's supervisor harassed her, shouted at her, and criticized her work in front of other employees, that supervisor inquired about employee's menopause and whether employee's husband was sexually impotent from diabetes, and that supervisor misrepresented company's intentions about the security of employee's position permitted an inference that supervisor intended to harm employee emotionally). *But see, King v. Wiseway Super Center, Inc.*, 954 F.Supp. 1289 (N.D.Ind.1997) (dismissing claim where supervisor constantly sabotaged Plaintiff's efforts to perform her job by scheduling her improperly, not allowing her to perform her job duties, not treating her as a manager, not giving her the information she needed, never communicating with her, never training her, forcing her to work without breaks, and making derogatory comments to others about her and her abilities).

In the present case, none of the conduct alleged by Nolen is even close to the type of severe conduct that "exceeds all bounds usually tolerated by a decent society." In addition, Nolen has not properly pleaded an actual claim for infliction of emotional distress. His pleadings state only that he has suffered distress and emotional harm, was mentally damaged, and incurred psychological expenses. Accordingly, summary judgment is proper as to this state law claim.

### *CONCLUSION*

For the preceding reasons Defendant's motion is hereby **GRANTED IN PART**

and **DENIED IN PART.** Plaintiff's Hostile Environment claim, Retaliation claim and Emotional Distress claim are hereby DISMISSED. Nolen's claim of *quid pro quo* sexual harassment remains.

IT IS SO ORDERED.