Anne M. MINOR, Plaintiff–Appellant,

v.

IVY TECH STATE COLLEGE,
Defendant–Appellee.

No. 98–3767.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1999.

Decided April 5, 1999.

Nathaniel Ruff (argued), Merrillville, IN, for Plaintiff–Appellant.

Kenneth B. Siepman (argued), Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for Defendant–Appellee.

Before POSNER, Chief Judge, and CUDAHY and ROVNER, Circuit Judges.

POSNER, Chief Judge.

■ Anne Minor, the plaintiff in this Title VII suit against Ivy Tech State College, a public vocational college in Indiana, appeals from the grant of summary judgment for the defendant. She claims that she was sexually harassed by Darnell Cole, the Chancellor of several of the college's campuses in northwestern Indiana, including those at Gary and Hammond. His office is in Gary, and that is where Minor, a guidance counselor employed by Ivy Tech, now works. But before June 1993, she worked at the Hammond campus. Between July 1992 and her transfer to Gary eleven months later, Cole, according to Minor's deposition, called her almost every day, rarely discussing business. Apparently he would ask her how she was, but beyond that there is no evidence concerning the content of the conversations. Cole talked, she thought, in a very friendly way, the way a boyfriend might talk; his voice was sexy; and though he never asked her for a date or proposed any sexual or otherwise erotic connection, she believed that his calls constituted overtures awaiting a response from her. She says that his words were at times "stalker-like" and "had these overtones at certain times that were sexual," but she does not indicate what the words were that gave her these impressions. One time he entered her office in Hammond and told her he'd been watching her through a window and knew what she was doing. She felt that "this was lecherous of Cole. It really scared me." And in the same month (December of 1992) he called her at home to wish her a Merry Christmas even though he had already wished all the employees a Merry Christmas at work.

■ During this period when Minor was working in Hammond, Cole's Hammond secretary told Minor that Cole had "cased" the secretary's house and told her he knew where every female employee of Ivy Tech lived. Minor's testimony as to what Cole told the secretary was inadmissible hearsay, *Morrow v. Wal–Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir.1998); *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 949–52 (7th Cir.1998), however, and therefore unusable

in summary judgment proceedings without a showing not attempted here that it could readily be replaced at trial by admissible evidence. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742–43 (7th Cir.1997). And the secretary denied Minor's testimony in her own deposition. Minor also testified to rumors she had heard that Cole had had sexual relationships with members of the Ivy Tech staff; these rumors also were inadmissible hearsay. Courts must be particularly assiduous to enforce the hearsay rule in sexual harassment cases in order to protect the privacy both of alleged victims and alleged harassers against scurrilous rumors (designed to coerce either settlement or abandonment of the suit) regarding their sex lives.

Oddly, after Minor transferred to Gary and thus was working in the same building as Cole, the acts of alleged harassment virtually ceased. Once, it is true, Cole asked her whether she was pregnant (she had gained weight after moving to Gary); and in April 1994, during a meeting in his office in which he accused Minor and another female employee of spreading rumors about him, he put his arms around Minor, kissed her, squeezed her, and said, "Now, is this sexual harassment?" Although this was the last alleged incident of sexual harassment, Minor did not file her complaint with the EEOC until October 1994. That was also when she filed a grievance with Ivy Tech pursuant to the college's grievance machinery for complaining about sexual harassment.

 Most of the alleged harassment occurred before Minor's transfer to the Gary campus in June 1993, and all of that harassment was outside the 300–day statute of limitations in Title VII. 42 U.S.C. § 2000e–5(e). You cannot reach back before the 300–day period unless you are alleging a continuing violation, a term to which we have given a practical meaning in the sexual-harassment context. Sexual harassment often consists of a series of harassing acts, often minor in themselves, and it may not be apparent to the victim that they add up to harassment until some time after the first act. As soon as it is apparent, the 300–day period (shorter in some states) begins to run, and if the complaint is filed within that period the plaintiff can reach back to the earlier acts in the series since she is not blameworthy for having failed to sue when they occurred. See *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir.1999); *Dasgupta v. University of Wisconsin Board of Regents*, 121 F.3d 1138, 1139 (7th Cir.1997); *Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164, 1167 (7th Cir.1996). But by the same token, as these cases also make clear, if the earlier acts were the serious ones and the later acts were not essential to make it apparent to the victim that she had a claim for sexual harassment, she can still sue within 300 days of the last act, but she cannot reach back and impose liability for the earlier acts; a suit based on them would be time-barred because she had no excuse for waiting. And that is this case. The later acts, the acts that were within the statutory period, all occurred after Minor's transfer to Gary. They were icing on the cake, and clearly insufficient in themselves to constitute actionable harassment.

 But even if Cole's conduct when Minor was still at Hammond is considered, as it should not be, in deciding whether summary judgment is appropriate, there is insufficient evidence of harassment to support the suit. Harassment is actionable under Title VII only if it can be described as discrimination in the terms or conditions of work. Therefore, sexual harassment that does not involve a supervisor's extorting sexual favors, that instead involves the creation of a hostile work environment, must be sufficiently severe or pervasive to make the workplace intolerable for the members of the group discriminated against. *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283–84, 141 L.Ed.2d 662 (1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114

S.Ct. 367, 126 L.Ed.2d 295 (1993); *Cowan v. Prudential Ins. Co.*, 141 F.3d 751, 757–59 (7th Cir.1998); *Galloway v. General Motors Service Parts Operations, supra*, 78 F.3d at 1167; *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir.1995); *Butler v. Ysleta Independent School District*, 161 F.3d 263, 269–71 (5th Cir.1998); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir.1998). It must be "extreme." *Faragher v. City of Boca Raton, supra*, 118 S.Ct. at 2284. It is not enough that a supervisor or coworker fails to treat a female employee with sensitivity, tact, and delicacy, uses coarse language, or is a boor. Such failures are too commonplace in today's America, regardless of the sex of the employee, to be classified as discriminatory.

Of course stalking a female employee crosses the line. But there is no evidence of that here. Cole did not follow Minor about, or drive past her home, or call her late at night, or quiz her about her personal life. He did not engage her in conversations about sex or love. He called her frequently at work when she was in Hammond and he in Gary, but the evidence is uncontradicted that he called many employees frequently; that was his managerial style. She makes much of the fact that she did not report to him directly; there was another tier of management between them. But it would be more uncommon than common for a manager to talk only to the people who report directly to him. It is not as if Minor were one of several hundred employees of the same rank, for Cole obviously couldn't call all of them almost every day without soon being fired for managerial incompetence; apparently there was only a handful of employees at her level and he called all of them frequently, just to keep in touch. It is no part of the function of Title VII to change a "hands on" management style (provided "hands on" is understood metaphorically) merely because it might strike a suspicious employee as having sexual overtones.

As for Cole's "sexy voice," we are concerned about the legal risk that would be placed on employers if a plaintiff in a sexual harassment case could get to a jury on the basis of nebulous impressions concerning tone of voice, body language, and other nonverbal, nontouching modes of signaling. It is one thing to tell a supervisor that he should not propose sex to a subordinate, display pornographic pictures to her, or touch her in a suggestive fashion; those are indeed things that an employer should tell its supervisors not to do. It is another thing for an employer to be required under pain of legal sanctions to make sure that its supervisors never inflect their voice or posture in such a way that a woman might think they were "coming on" to her. That would be a counsel of perfection, and the aims of Title VII are more modest.

█ This is not to deny the importance of context, which can include "gesture, inflection, the physical propinquity of speaker and hearer, [and] the presence or absence of other persons.... [R]emarks accompanied by threatening gestures or contorted facial features, or delivered from so short a distance from the listener's face as to invade the listener's private space," can ominously magnify the import of the speaker's words. *Baskerville v. Culligan Int'l Co., supra*, 50 F.3d at 431. But gestures, contorted features, propinquity—these are all objective characteristics of an interaction. Not so with "sexy voice," which is in the ear of the listener. It would be different if Minor had testified that Cole had tried to disguise his voice, or had shouted, or had whispered; these would be objective characteristics of voice.

Cole would have been well advised not to embrace Minor and say, "Now, is this sexual harassment?" But what he said was correct; this isolated embrace, which so far as appears was humorously rather than erotically intended, was not sexual harassment.

No other issues need be discussed. The judgment is

AFFIRMED.