**Edward O'HARA, Plaintiff,**

v.

**ILLINOIS DEPARTMENT OF MENTAL HEALTH, and Janis Thomas, Donald Kraybill, Mary Brogan, individually and in their official capacities, Defendants.**

No. 96 C 6752.

United States District Court,
N.D. Illinois,
Eastern Division.

June 27, 2000.

Edward O'Hara, Chicago, IL, plaintiff, pro se.

Evelyn R Pacino, Illinois Attorney General's Office, Chicago, IL, Hilary R. Malina, Matkov, Salzman, Madoff & Gunn, Chicago, IL, for Mary Brogan, defendant.

Isham Russell Jones, III, Illinois Attorney General's Office, Chicago, IL, for Illinois Department of Mental Health, defendant.

Evelyn R Pacino, Illinois Atty. General's Office, Chicago, IL, Evelyn R. Pacino Sanguinetti, Herbert H. Victor, Chicago, IL, for Donald Kraybill, defendant.

Evelyn R Pacino, Illinois Atty. General's Office, Chicago, IL, for Janice Thomas, defendant.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

From 1988 to 1991 Edward O'Hara, an African–American man, worked as a jani-

**707**

tor for a facility run by the Illinois Department of Mental Health (later the Illinois Department of Human Services (the "Department")). He was a member of AFSCME Union Local 784. He was frequently disciplined for misconduct and aggressive behavior throughout his career at the Department, which he attributes to racism. He was fired in 1991, officially for assaulting a supervisor, but the firing was rescinded and replaced with a 60 day suspension under the understanding that further incidents would lead to irrevocable termination.

From 1992 to October 1995, Mr. O'Hara worked as a janitor for the Department at a different facility. In September 1995, he was charged with assaultative conduct and disruption of the worksite, in particular, acting in a belligerent and aggressive manner at a co-worker's grievance hearing in August 1995, where he falsely represented himself as a union steward, was asked to leave, refused to do so, and continued to yell at those in the room. He was fired on October 10, 1995. After grievance arbitration, he was allowed to submit his resignation effective January 7, 1996, and the discharge was reversed to "separation/no reason," although Mr. O'Hara says the union local did this deal without his consent.

Mr. O'Hara filed an EEOC charge alleging race and sex harassment, discrimination, and retaliation, and got a right to sue letter on January 12, 1996. He filed this lawsuit in November 1996, alleging violations of Title VII and civil rights laws under 42 U.S.C. §§ 1981 (race) & 1983 (free speech). The defendants move for summary judgment, and I grant the motion, finding in their favor and against Mr. O'Hara.

## I.

Summary judgment is a way of resolving a case where there would be no point in a trial. It is appropriate where there is no material issue of fact and the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). This means that if the facts argued by (here) the plaintiff would not support a verdict in his favor even if they were believed, there would be no reason to have a trial to find out if they were true. In considering a summary judgment motion, I take the facts in the light most favorable to Mr. O'Hara, *Fulk v. United Transp. Union,* 160 F.3d 405, 407 (7th Cir.1998), but Mr. O'Hara must come forward with enough evidence so that a rational jury could find for him at trial. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Mr. O'Hara was represented by counsel when he filed this lawsuit, but is now proceeding without a lawyer. I must "ensure that the claims of a pro se litigant are given a fair and meaningful consideration." *Palmer v. City of Decatur,* 814 F.2d 426, 428–29 (7th Cir.1987). Pro se pleadings are to be "held to less stringent standards than those prepared by counsel." *Donald v. Cook County Sheriff's Dep't,* 95 F.3d 548, 555 (7th Cir.1996). However, I am not Mr. O'Hara's lawyer, and while I will give him every reasonable benefit of the doubt, I will not make his case for him.

The defendants claim that the majority of Mr. O'Hara's claims are time barred, having occurred more 300 days before he filed discrimination charges. They argue that only his actual termination and two other minor incidents of alleged harassment are within the limitations period. However, these events come back into the lawsuit on the continuing violations doctrine, under which conduct that falls outside the limitations period is actionable if it is linked with related acts that fall within the period. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir.1992). The doctrine is applicable when the conduct can be recognized as actionable only in the light of later events that occurred within the limitations period, *Filipovic v. K & R Express Sys., Inc.,* 176 F.3d 390, 396 (7th Cir.1999), because the plaintiff had no rea-

son to believe that he had been subject to actionable conduct when the events outside the limitations period occurred. *Selan,* 969 F.2d at 565–66. That is true here, although as will emerge it is largely irrelevant because Mr. O'Hara has waived most of the disputed episodes.

## II.

### A.

■ I begin with Mr. O'Hara's Title VII claims. His first theory is race harassment. A plaintiff may establish a violation of Title VII by proving that discrimination based on race, sex, or some protected characteristic has created a hostile or abusive work environment. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Harassment must be sufficiently severe or pervasive to make the workplace intolerable for the members of the group discriminated against. *Minor v. Ivy Tech State College,* 174 F.3d 855, 857 (1999). Moreover, harassment is actionable only if it is "because of" race or some other protected characteristic. *Shermer v. Illinois Dep't of Transp.,* 171 F.3d 475, 477 (7th Cir. 1999). Title VII does not impose liability on an employer for creating or condoning a hostile working environment unless the hostility is motivated by some status that the statute protects. *Heuer v. Weil–McLain,* 203 F.3d 1021, 1024 (7th Cir. 2000). Mr. O'Hara presents no evidence that he was harassed because of his race or sex. He swears in an affidavit that:[1]

■ (1) He was "segregated" from eating in the lunchroom with his co-workers or written up if he was observed in the lunchroom eating. Even if so, Mr. O'Hara would have to offer, *e.g.,* (1) direct evidence of discriminatory motivation, for example, racist remarks in connection with this "segregation," or (2) evidence that similarly situated whites were not thus "segregated" or written up for using the lunchroom, or that similarly situated African–American men, if any, were also thus "segregated" or written up. Otherwise, the evidence is just that Mr. O'Hara may have been unfairly treated, but not necessarily because of race. He offers no evidence whatsoever of racial or other illegal animus.

Mr. O'Hara says that he could offer such evidence at trial and has witnesses who could testify for him, but he does not say who they are or what they would say.[2] I read the record and all reasonable inferences to be drawn from it in his favor, but I can't just take his word that the evidence exists and, if believed, would justify a verdict in his favor. He must come forth with the evidence. *See Liu v. T & H Machine, Inc.,* 191 F.3d 790, 796–97 (7th Cir.1999). Although I give Mr. O'Hara the benefit of the doubt, unargued claims are treated as waived, that is, in effect not made. *United States v. Payne,* 102 F.3d 289, 293 (7th Cir.1996).

■ (2) Mr. O'Hara says that false allegations were made that he allegedly sexually assaulted a patient and made a death threat, but both allegations were found on investigations to have been groundless. However, Mr. O'Hara does not offer any evidence tying the investigations or any false allegations to racial or other prejudice. There was an allegation of patient abuse while Mr. O'Hara was on duty; he among others was investigated as required by Department policy, and was not a suspect. The state police investigated an

---

1. There are other incidents in Mr. O'Hara's complaint that the defendants discuss in their summary judgment motion, but since in his response Mr. O'Hara does not address their arguments with respect to those incidents, he effectively concedes the defendants are right about them. I consider only the incidents that he does at least mention in his response.

2. In a previous filing, Mr. O'Hara submitted an unsworn statement by his AFSCME Local Vice President stating that he discussed "a pattern of discrimination" apparently directed at Mr. O'Hara. His testimony about this involves the investigations discussed under point (2) below.

anonymous death threat received by Department supervisors in the mail, but Mr. O'Hara was not disciplined for anything relating to this investigation. In the circumstances, failing to investigate Mr. O'Hara would have been irresponsible, and so investigating him was not adverse action, harassment, or other discrimination, as long as he was not singled out for no good reason, and he was not. To discourage investigations when a subject is in a protected group would have the effect of barring all investigations, because everyone is in some protected group. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 745 (7th Cir.1999).

■ (3) Mr. O'Hara alleges that a manager directed his immediate supervisors to scrutinize his work more closely than others', and that he had to clean the third floor by himself, "with[out] the assistance of another co-worker" as was usually provided. Again, Mr. O'Hara offers nothing tying these actions to race or any other protected status. Moreover, close scrutiny of one's work without other negative results may be irritating, but it is not by itself harassment; and although having to shoulder a great deal more work for the same pay could be discrimination, merely having to clean the third floor by oneself is also not harassment in these circumstances when it is part of one's job anyway.

## B.

■ Mr. O'Hara's second theory is disparate treatment, that these actions were intentional discrimination (other than harassment) because of his race or sex. Lacking direct evidence, a plaintiff can make such a case by the "indirect" method of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A prima facie case of discrimination requires that the plaintiff show that: (1) he in a protected group, (2) he was qualified for the job and performed satisfactorily, (3) he was subject to adverse action, and (4) employees not in the protected group were treated more favorably. *O'Connor v.* *Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310–11, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). The defendants must then articulate a nondiscriminatory reason for the adverse action. Mr. O'Hara must then bring forward evidence that the stated reason is merely a pretext for discrimination. *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1404 (7th Cir.1996).

■ Mr. O'Hara is African–American and male, so in several protected groups. His final termination and exclusion from or citation for eating in the lunchroom are adverse actions; the other actions he mentions were not. It is adverse action when an employee is fired or demoted, suffers a decrease in benefits or pay, or is given a significantly lesser job. *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir.1996). Not everything that makes an employee unhappy is adverse action; otherwise minor employment actions that "an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996). Two false allegations without other consequences when an employee is cleared in investigations of wrongdoing is not adverse action; neither is closer scrutiny when there were disciplinary and performance problems; and while having to shoulder much more work for the same pay could be adverse action, having to clean the third floor by oneself, when it is part of one's job anyway, is not.

■ Even with respect to the actual adverse actions Mr. O'Hara suffered, however, he fails to make his prima facie case because: (1) he offers no evidence that similarly situated employees outside his protected groups, *i.e.*, whites or women, were treated better, for example, by being allowed in the lunchroom when he and other African–American men were not, or that such employees were not terminated as he was despite similar aggressive behavior. (2) Mr. O'Hara does not argue that his aggressive behavior at the griev-

ance hearing was not the real reason he was fired. He argues that it would be illegal to fire someone for aggressively defending a union member at a grievance hearing because it would violate his union contract. However, even if the firing was a contract violation, that would not make it discrimination. A nondiscriminatory reason doesn't have to be lawful, just nondiscriminatory. In his complaint, Mr. O'Hara rather creatively argues that the alleged contract violation is a discrimination claim, a violation of 42 U.S.C. § 1981 (no racial discrimination in contracting), but he offers no actual evidence that there was forbidden prejudice or animus behind his firing rather than his aggressive behavior.

### C.

■ Finally, Mr. O'Hara argues that he was subject to illegal retaliation, specifically, more intensive supervision and having to clean the third floor alone,[3] for acting to oppose conduct he believed to be illegal discrimination. To make out an indirect case for illegal retaliation, Mr. O'Hara must show that (1) he engaged in activity protected under Title VII; (2) he was subject to adverse employment action; and (3) a causal connection existed between the adverse action and the protected activity. *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 708 (7th Cir.1995). However, as remarked, the incidents Mr. O'Hara adduces here (more intensive supervision, having to clean the third floor by himself) were not severe enough to count as adverse action.

### III.

I now take up Mr. O'Hara's civil rights claims. He contends that the defendants illegally subjected him to adverse action and then fired him in breach of his union contract because he was African–American, in violation of 42 U.S.C. § 1981, and also illegally retaliated against him for exercising his First Amendment rights, in violation of 42 U.S.C. § 1983. The defendants argue that the claims based on incidents occurring before November 24, 1994, are time barred by a two-year statute of limitations. I need not address this claim because Mr. O'Hara waives those claims by not addressing them in his response.

■ With respect to the remaining claims, Mr. O'Hara is absolutely correct to be outraged at the defendants' attempt to block his official capacity lawsuits against individual defendants by invoking the state's sovereign immunity under the Eleventh Amendment, and he is exactly right about why this proposal is outrageous. In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court held that § 1983 does not create "a waiver of a State's Eleventh Amendment immunity merely because an action could be brought under that section against state officers, rather than against the State itself." *Id.* at 676–77, 94 S.Ct. 1347. But state *officers* can indeed be sued in their official capacities, albeit only for prospective injunctive or declaratory relief and not for retrospective money damages that would have to be paid from the state treasury, *id.*, as Mr. O'Hara does here.[4] More recently, the Court explained, "nor does our reaffirmance of *Edelman* render § 1983 meaningless insofar as States are concerned." *Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (*citing Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). An *Ex parte Young* action provides a means to sue a state officer in his or her official capacity for illegally depriving someone of his constitutional rights, as Mr. O'Hara argues happened here. If the Eleventh

---

3. There are the examples mentioned in Mr. O'Hara's reply brief. The other instances discussed in his deposition testimony are waived because they are not argued, but I have reviewed them and found them to be no more meritorious than these.

4. The § 1981 action is brought through a § 1983 action. *See Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

Amendment were read to bar that sort of action as well as lawsuits against the states themselves, there would be little left of the Reconstruction amendments. Mr. O'Hara does not exaggerate much when he argues that this would "take us back to the time when Slavery was legal and men were considered as chattel." I decline to reverse the verdict of Appomattox,[5] and so reject the idea that the Eleventh Amendment bars an official capacity lawsuit against an unconsenting state officer.

■ Mr. O'Hara can sue the individual officers in their official capacities, at least for prospective injunctive or declaratory relief, but he fails to make his case for a violation. While § 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical. *Von Zuckerstein v. Argonne National Laboratory*, 984 F.2d 1467, 1472 (7th Cir. 1993). Mr. O'Hara fails to introduce any evidence that the defendants perpetrated any adverse action because of racial animus or that their nondiscriminatory reasons were pretexts for discrimination, whether or not they were in violation of the union contract.

■ Mr. O'Hara's § 1983 First Amendment claim is that he was fired for speaking up at the grievance meeting, and otherwise subject to adverse action for opposing unlawful discrimination. In order to establish a First Amendment retaliation claim, (1) the speech in which the plaintiff engaged must have been constitutionally protected under the circumstances, and (2) the defendants must have retaliated against him because of it. *Gustafson v. Jones*, 117 F.3d 1015, 1018 (7th Cir.1997). To be protected, the speech must be on a matter of public concern. *Id.* Moreover, the employee's interest in speech must outweigh governmental interests in running an efficient and productive office. *DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 191 (7th Cir.1995). The plaintiff must also show that he has suffered adverse action as a consequence. *Id.*

Mr. O'Hara claims that he was addressing discrimination on the job, which would normally be a matter of public concern. *See Givhan v. Western Line Consolidated Sch. Dist.*, 439 U.S. 410, 414, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). However, the only episodes where he has not waived the argument and where his speech was also at issue involved, first, the facts underlying his Title VII harassment—the reports of harassment leading to the especially close scrutiny of Mr. O'Hara's work and his having to clean the third floor alone. As I explained in the Title VII context, these were not adverse action.

■ The second episode, Mr. O'Hara's termination after the grievance hearing, was certainly adverse action, but Mr. O'Hara does not bring forward any evidence that he was discussing discrimination or any other matter of public concern at the meeting. Nor does he bring forward any evidence, even his own sworn statement, that he was not aggressive and disruptive in a way that would have interfered with governmental interests in running an efficient and productive office. Nothing Mr. O'Hara says indicates that his behavior at the grievance hearing was necessary or valuable enough to outweigh the government's interest in running an efficient and productive office, as opposed to being merely rude. I conclude that Mr. O'Hara's speech at the meeting was not constitutionally protected.

Mr. O'Hara has vigorously prosecuted the matter over a very long time with a good deal of determination, but it is hard to succeed in a case like this as a pro se litigant, even when one has done a respectable job for a nonlawyer, as Mr. O'Hara has here. But I must GRANT summary judgment to the defendants, terminating this case.

---

5. The site of Lee's surrender to Grant in 1865.