In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1117

Audrey Jo DeClue,

Plaintiff-Appellant,

v.

Central Illinois Light Company,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 98-C-1276--Michael M. Mihm, Judge.

Argued June 9, 2000--Decided August 2, 2000

Before Bauer, Posner, and Rovner, Circuit Judges.

Posner, Circuit Judge. This suit under Title VII
by a female lineman for an electric company
requires us to decide whether an employer's
failure to alter working conditions that just
happen, without any discriminatory intent, to
bear more heavily on its female than on its male
employees can be an actionable form of sexual
harassment.

The plaintiff, who became an apprentice lineman
in 1994, complains about various acts of sexual
harassment that occurred beginning then. But she
did not file a complaint with the EEOC until
1997, and the judge ruled that she could not
reach back to incidents that had occurred more
than 300 days before that filing, the applicable
period of limitations. Finding insufficient
evidence of harassment during the 300-day window,
he granted summary judgment in favor of the
defendant.

The plaintiff invokes the "continuing violation"
doctrine, but that doctrine comes into play in a
sexual-harassment case only when the plaintiff
was reasonable not to perceive her working
conditions as intolerable until the acts of
harassment had, through repetition or cumulation,
reached the requisite level of severity. E.g.,
Garrison v. Burke, 165 F.3d 565, 569-70 (7th Cir.

1999); Galloway v. General Motors Service Parts Operations, 78 F.3d 1164, 1167 (7th Cir. 1996); Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1310 (10th Cir. 1999). The incidents that occurred in this case before the 300-day limitations period included a coworker's deliberately urinating on the floor near where the plaintiff was working, repeated shoving, pushing, and hitting her, sexually offensive touching, exposing her to pornographic magazines, and--the point she particularly emphasizes--failing to make adequate provision for restroom facilities for her. Nothing that happened later, that is, within the period of limitations, added materially to the conditions of which she complains; it was just more of the same. The earlier incidents thus put her on notice, and so she can no longer base a claim upon them. Miller v. American Family Mutual Ins. Co., 203 F.3d 997, 1004 (7th Cir. 2000); Minor v. Ivy Tech State College, 174 F.3d 855, 857 (7th Cir. 1999); Provencher v. CVS Pharmacy, 145 F.3d 5, 14-15 (1st Cir. 1998).

The only significant act--omission would be more precise--of alleged sexual harassment that occurred during the limitations period was the electric company's continued failure to provide restroom facilities for the plaintiff, who was the only woman in the crew of linemen to which she was assigned--in fact the only woman lineman employed by the company. Linemen work where the lines are, and that is often far from any public restroom; nor do the linemen's trucks have bathroom facilities. Male linemen have never felt any inhibitions about urinating in the open, as it were. They do not interrupt their work to go in search of a public restroom. Women are more reticent about urinating in public than men. So while the defendant's male linemen were untroubled by the absence of bathroom facilities at the job site, the plaintiff was very troubled and repeatedly but unsuccessfully sought corrective action, for example the installation of some sort of toilet facilities in the linemen's trucks.

The question is whether the defendant's failure to respond to the plaintiff's request for civilized bathroom facilities can be thought a form of sexual harassment, and we think it can not be. This is not because no reasonable person could think an absence of bathroom facilities an intolerable working condition; in most workplaces, such an absence would clearly be thought that. And it is not because Title VII creates remedies only against intentional discrimination. An employee may also complain about an employment practice that while not deliberately discriminatory bears harder on the

members of a protected group, that is, in the jargon of discrimination law, has a "disparate impact" on that group, and the employer "fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. sec. 2000e-2(k)(1)(A)(i); see, e.g., Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971); Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 645-46 (1989); Vitug v. Multistate Tax Comm'n, 88 F.3d 506, 513 (7th Cir. 1996). Therefore, insofar as absence of restroom facilities deters women (normal women, not merely women who are abnormally sensitive) but not men from seeking or holding a particular type of job, and insofar as those facilities can be made available to the employees without undue burden to the employer, Watson v. Fort Worth Bank & Trust Co., 487 U.S. 977, 998 (1988); Davey v. City of Omaha, 107 F.3d 587, 593 (8th Cir. 1997), the absence may violate Title VII. Cf. Lynch v. Freeman, 817 F.2d 380, 387-89 (6th Cir. 1987). We need hardly add that women are not "unreasonable" to be more sensitive about urinating in public than men; it is as neutral a fact about American women, even though it is a social or psychological rather than physical fact, as the fact that women's upper-body strength is on average less than that of men, which has been held in disparate-impact litigation to require changes in job requirements in certain traditionally male job categories. Berkman v. City of New York, 705 F.2d 584 (2d Cir. 1983); Blake v. City of Los Angeles, 595 F.2d 1367, 1375 (9th Cir. 1979); cf. Evans v. City of Evanston, 881 F.2d 382 (7th Cir. 1989).

 But this case has not been litigated as a disparate-impact case. Neither the term nor any synonym appears anywhere in the record. The briefs are silent about it too. The plaintiff has insisted on litigating her case as a hostile-work-environment case throughout. But it is not. Sexual harassment is the form of sex discrimination in the terms or conditions of employment that consists of efforts either by coworkers or supervisors to make the workplace intolerable or at least severely and discriminatorily uncongenial to women ("hostile work environment" harassment), and also to efforts (normally by supervisors) to extract sexual favors by threats or promises ("quid pro quo" harassment). Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 752 (1998). (Occasionally men can complain of sexual harassment too, but we can disregard such cases.) It is a form of, rather than a synonym for, sex discrimination. It is remote, for example, from a simple refusal to hire women, from holding them to higher standards than their male coworkers, or from refusing to make accommodations for differences in upper-body

strength or other characteristics that differ systematically between the sexes. The last is the classic disparate-impact claim, and it is the claim suggested by the facts of this case but not presented by the plaintiff.

The requirements for proving, and the defenses to, charges of sexual harassment have been configured in light of the distinct nature of that form of sex discrimination. The principal defense that the law recognizes to a hostile-work-environment sexual-harassment charge, the charge made here, is that the defendant had done all he could to prevent the harassment, id. at 765; the principal defense to a disparate-impact claim is, as the statutory provision and cases that we cited earlier make clear, that the burden on the defendant of eliminating the disparity would be too heavy. By failing to present her case as one of disparate impact, the plaintiff prevented the defendant from trying to show that it would be infeasible or unduly burdensome to equip its linemen's trucks with toilet facilities sufficiently private to meet the plaintiff's needs. She has waived what may have been a perfectly good claim of sex discrimination, though that we need not decide.

Of course, as a purely semantic matter, it might be possible to argue that an employer who fails to correct a work condition that he knows or should know has a disparate impact on some class of his employees is perpetuating a working environment that is hostile to that class. But if this argument were accepted, it would make disparate impact synonymous with hostile work environment, erasing the important distinctions mentioned in the preceding paragraph.

The district judge was therefore right to grant summary judgment in favor of the defendant.

Affirmed.


ROVNER, Circuit Judge, dissenting in part. When my nomination to the Court of Appeals was announced in 1992, the late Judge Walter J. Cummings wrote me a kind note of congratulations that ended with the observation, "At long last, the ladies' room off the [judges'] conference room will have some use!"

Thank goodness there was a women's room! When women like Audrey Jo DeClue arrive in workplaces that hitherto were all-male, they often discover that the facilities for women are inadequate, distant, or missing altogether. See Gail Collins, Potty Politics: The Gender Gap (Installation of

Bathrooms for Women), Working Woman, March 1, 1993, at 93. Women know that this disparity, which strikes many men to be of secondary, if not trivial, importance, can affect their ability to do their job in concrete and material ways. As recently as the 1990s, for example, women elected to the nation's Congress--which had banned gender discrimination in the workplace some 30 years earlier--found that without careful planning, they risked missing the vote on a bill by heeding the call of nature, because there was no restroom for women convenient to the Senate or the House chamber. See Catherine Strong, When a congressman needs a commode, he strides . . ., Associated Press, June 22, 1997; Lois Romano, On the Hill, The Gender Trap; Breaking Into the Congressional Cloakroom, Washington Post, March 6, 1990, at C1.

 As my colleagues acknowledge, when an employer provides no restrooms at all to its employees and expects them to relieve themselves outdoors, the burden falls more heavily on women than it does on men. Ante at 3-4. Not simply because women may be more reticent about relieving themselves in the open, I might add. See ante at 3. The fact is, biology has given men less to do in the restroom and made it much easier for them to do it. If men are less reluctant to urinate outdoors, it is in significant part because they need only unzip and take aim. And although public urination is potentially a crime whether committed by a man or a woman, see, e.g., People v. Duncan, 631 N.E.2d 803, 804 (Ill. App. 1994) (disorderly conduct); Elliott v. State, 435 N.E.2d 302, 303-04 (Ind. App. 1982) (public indecency), the risk of being caught in the act is arguably greater for women, for whom it is a more cumbersome, awkward, and time-consuming proposition./1 For all of these reasons, I agree with my brothers that an employer's failure to provide restroom facilities for its workforce can support a disparate-impact claim for female employees. Ante at 3-4.

 But there are respects in which the refusal to provide female employees with restrooms can be understood as creating a hostile work environment as well. See Kline v. City of Kansas City, Mo. Fire Dep't, 175 F.3d 660, 668 (8th Cir. 1999) (as to hostile environment claim, error to exclude evidence of ill-fitting clothing and unequal bathroom facilities provided to female fire department employees), cert. denied, 120 S. Ct. 1160 (2000). Restroom facilities are, after all, the norm in the workplace, and the refusal to provide such facilities to workers is, most would agree, an act which alters the terms and conditions of one's employment. See generally Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405 (1986) (describing

elements of hostile environment claim). There may be some work environments in which it is not feasible to make any type of relief facilities available to employees, but DeClue's was not one of them. For at least one two-week period, she was given the use of a "port-a-potty", and eventually, after she filed a charge with the EEOC, the company began providing "Brief Reliefs" (disposable urine bags) and privacy tents for DeClue and the other lineworkers to use at jobsites. Granted, the refusal to provide restrooms and comparable facilities is somewhat different from the affirmative acts of sexual and sex-based harassment that we typically see in hostile environment cases. Cf. 29 C.F.R. sec. 1604.11(a) (2000); Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430-31 (7th Cir. 1995). Nonetheless, when, in the face of complaints, an employer fails to correct a work condition that it knows or should know has a disparate impact on its female employees--that reasonable women would find intolerable--it is arguably fostering a work environment that is hostile to women, just as surely as it does when it fails to put a stop to the more familiar types of sexual harassment. Cf. Guess v. Bethlehem Steel Corp., 913 F.2d 463, 465 (7th Cir. 1990). Indeed, the cases teach us that some employers not only maintain, but deliberately play up, the lack of restroom facilities and similarly inhospitable work conditions as a way to keep women out of the workplace. See, e.g., Catlett v. Missouri Highway and Transp. Com'n, 828 F.2d 1260, 1265-66 (8th Cir. 1987), cert. denied, 485 U.S. 1021, 108 S. Ct. 1574 (1988); Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 874-75 (11th Cir. 1986); see also E.E.O.C. v. Monarch Machine Tool Co., 737 F.2d 1444, 1447 (6th Cir. 1980); see generally Vicki Schultz, Telling Stories About Women and Work: Judicial Interpretations of Sex Segregation in the Workplace in Title VII Cases Raising the Lack of Interest Argument, 103 Harv. L. Rev. 1749, 1832-39 (1990).

The evidence in this case supports a hostile environment claim. First, although DeClue complained about the lack of relief facilities repeatedly, the electric company did not make them available on a consistent basis until late 1997 or early 1998, after she filed her EEOC charge. Second, the alternatives that the company offered in response to DeClue's complaints--the use of a truck to drive to the nearest public facility, or summoning a supervisor or troubleshooter to take her to such a facility when a truck was unavailable--were both impractical (the nearest restroom might be ten or twenty miles away from the jobsite, as might be the nearest supervisor or troubleshooter, see DeClue Dep. vol. 1 at 120-22) and served only to

stigmatize her. Her co-workers, in fact, made harassing remarks about this very subject,/2 and in one of DeClue's performance evaluations, her crew leader wrote that "a wom[a]n on the job of this type makes it hard with restroom facilities." DeClue Dep. Ex. 11 at 2./3 Third, on jobsites that were literally out in the open, with no trees or shrubs to hide behind, male and female workers were forced to relieve themselves with almost no privacy whatsoever: DeClue's male co-workers regularly urinated in her presence (a practice that she complained about to no avail); and on at least one occasion, she discovered to her chagrin that the bulldozer behind which she had chosen to relieve herself had given her privacy from her co-workers and passing traffic, but not from a crotchety resident who lived nearby. DeClue Dep. vol. 1, at 126-28. Fourth, the lack of appropriate accommodations deprived DeClue of privacy among male co-workers who made a habit of keeping (and presumably viewing) pornographic magazines in company offices and in many company trucks--a practice that could only have increased the discomfort DeClue (and any reasonable woman) would have experienced relieving herself in the open. I dare say that if the tables were turned, and all but one of the employees in this environment were women, a reasonable man would be equally reticent to drop his trousers in order to relieve himself. DeClue's complaints are proof enough that she found the lack of relief facilities objectionable, and these circumstances certainly permit the inference that any reasonable woman would have felt the same. The defendant's failure to remedy the problem in turn could be viewed as a negligent response that subjects it to liability for a hostile work environment. Cf. Guess, 913 F.2d at 465.

 Discrimination in the real world many times does not fit neatly into the legal models we have constructed. Venters v. City of Delphi, 123 F.3d 956, 975 (7th Cir. 1997); Tomsic v. State Farm Mut. Auto. Ins. Co., 85 F.3d 1472, 1476 (10th Cir. 1996). The hostile environment theory itself was not one that Congress anticipated or provided for in the express terms of Title VII, but instead is one that scholars, the E.E.O.C., and judges have fashioned in acknowledgment of a very real and invidious form of sex discrimination in the workplace. See Meritor, 477 U.S. 57, 106 S. Ct. 2399./4 Because prejudice and ignorance have a way of defying formulaic constructs, the lines with which we attempt to divide the various categories of discrimination cannot be rigid. DeClue's complaint, insofar as it concerns the lack of restroom facilities, may fit more naturally into the disparate-impact framework that my colleagues discuss, but it also overlaps

with the hostile environment framework into which she has placed it. It should be allowed to proceed within that framework.

Therefore, although I join my colleagues in concluding that DeClue cannot complain of discriminatory incidents that occurred outside of the limitations period (ante at 2), I respectfully dissent from their holding that the failure to provide appropriate relief facilities--which failure did occur within the limitations period--cannot be pursued as a hostile environment claim.

/1 DeClue herself was the subject of at least one complaint from a customer who saw her urinate outdoors. DeClue Dep. vol. 1 at 125-29.

/2 Her crew leader, for example, allegedly made the following types of remarks: "You're just like my damn kids. I'm ready to leave and I have to wait for them to go to the bathroom"; "You've got the bladder of a three-year-old"; and "We'll never get to the job 'cause I'm sure we'll have to stop in Edwards for you to piss there too." Complaint at 7 para. 39.

/3 Her employer removed the comment from the evaluation at DeClue's request. See DeClue Dep. Ex. 11A, at 2.

/4 For another example of how our thinking about discrimination has evolved, consider the Pregnancy Discrimination Act of 1978, 42 U.S.C. sec. 2000e-(k), which made clear that Title VII's ban on sex discrimination included discrimination based on pregnancy and so overruled General Elec. Co. v. Gilbert, 429 U.S. 125, 97 S. Ct. 401 (1976). Gilbert held that a workplace insurance plan covering non-occupational disabilities other than pregnancy did not discriminate against women per se, but simply favored "nonpregnant persons" over pregnant women. See id. at 135, 97 S. Ct. at 407, quoting Geduldig v. Aiello, 417 U.S. 484, 496-97 n.20, 94 S. Ct. 2485, 2492 n.20 (1974).